# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| WILLIAM HOWISON, *in his capacity as Chapter 7 Trustee of the Bankruptcy Estate of John B. and Susan E. Everest*,<br><br>APPELLANT<br><br>v.<br><br>BANK OF AMERICA, N.A., ET AL.,<br><br>APPELLEES | CIVIL NO. 2:14-CV-05-DBH |

## DECISION AND ORDER ON BANKRUPTCY APPEAL

This bankruptcy appeal presents a puzzling question of how sale proceeds should be distributed under Maine mortgage statutory foreclosure law and foreclosure judgments, given the following chronology. The facts are stipulated and/or a matter of judicial record. I heard oral argument on May 8, 2014.

In the beginning, a second mortgagee foreclosed its second mortgage on a parcel of Maine real estate through the judicial foreclosure process. The judgment of foreclosure and order of sale stated that the second mortgagee was to sell the premises and disburse the proceeds. The mortgagor did not exercise her equity of redemption within the statutory 90 days. But the second mortgagee failed to conduct a foreclosure sale following the expiration of the redemption period.

Next, the first mortgagee foreclosed its first mortgage on the same parcel through the judicial foreclosure process. The first mortgagee served its foreclosure complaint on the mortgagor as a defendant, and on the second mortgagee and Maine Revenue Services (holder of a state tax lien) as parties-in-interest. Both the mortgagor and the second mortgagee defaulted in that judicial proceeding, but Maine Revenue Services appeared. The resulting foreclosure decree directed payment to the first mortgagee, then Maine Revenue Services, and ordered any sale surplus thereafter to go to the defendant (the mortgagor) and any "other party appearing in this action." The second mortgagee had not appeared. Maine courts rejected the second mortgagee's belated attempt to amend the language of that foreclosure decree.

The second mortgagee next purchased the first mortgagee's interest. As of yet, no foreclosure sale has occurred pursuant to the second decree, but the parties agree that there will be a surplus after the first mortgagee and Maine Revenue Services are paid (even after costs and expenses).

The question is, does the surplus that will result from the public sale pursuant to foreclosure of the first mortgage go to the mortgagor or to the second mortgagee?[1] The dispute began in bankruptcy court and the bankruptcy court's decision has been appealed here. If under Maine law the surplus goes to the mortgagor, the trustee in bankruptcy takes her place and the funds become

---

[1] The second mortgagee also argues that it should be allowed to proceed now with a public foreclosure sale pursuant to its earlier judgment notwithstanding the later first mortgage foreclosure. It has not fully developed the argument and I find it implausible as a matter of statutory construction as I explain later. Nevertheless, I note the argument in case the Maine Supreme Judicial Court siting as the Law Court takes a different view.

available for her unsecured creditors. Otherwise, the surplus goes to the second mortgagee. The question is close, there are no controlling Maine Law Court precedents, and such issues of mortgage law with possible title implications are generally of paramount state law concern. I therefore will certify the issue to the Maine Supreme Judicial Court sitting as the Law Court before I enter final judgment.

### FACTS AND PROCEDURAL BACKGROUND

Susan E. Everest ("Everest") owned real estate in Kennebunk, Maine. On February 17, 2009, as holder of a second mortgage that Everest had granted on the premises, Bank of America[2] began a lawsuit in the Maine District Court to foreclose its second mortgage. Bank of America named Everest as the defendant and a third mortgagee as a party-in-interest. On May 10, 2010, the Maine District Court entered a Foreclosure Judgment in favor of Bank of America and against mortgagor Everest and the third mortgagee.

Everest and her husband then filed a petition for relief under Chapter 7 of the United States Bankruptcy Code with the Bankruptcy Court of this District on July 23, 2010, and a Trustee was appointed for the case. Neither Everest nor the Trustee ever exercised the equity of redemption on the second mortgage foreclosure, and it has expired. But Bank of America failed to conduct a public sale of the premises (more precisely, of the mortgagor's equity of redemption under a first mortgage, as I explain later).

---

[2] Although the original holder of the second mortgage was Countrywide Home Loan Servicing, LP and later the mortgage was held by BAC Home Loans Servicing, LP, Bank of America is now the successor in interest to BAC Home Loans Servicing, LP. For simplicity, I will refer to the second mortgage as being owned by Bank of America throughout.

On August 10, 2010, People's United Bank ("Peoples United"), the holder of a first mortgage that Everest had granted earlier on the same parcel, obtained a relief from stay from the Bankruptcy Court so that it could proceed with its own state court foreclosure action on the premises. On October 29, 2010, Peoples United began its foreclosure lawsuit in Maine District Court, naming Everest as a defendant and Maine Revenue Services and second mortgagee Bank of America as parties-in-interest. All were properly served with process and both Everest and Bank of America defaulted. On March 22, 2011, the Maine District Court entered a Foreclosure Judgment on Peoples United's first mortgage. That Judgment stated that the proceeds of a foreclosure sale of the real estate were to be paid (after deducting costs of the sale) first to Peoples United to the extent of its debt, then to Maine Revenue Services for tax liens,[3] then to the "Defendant or any other party appearing in this action." Appellate Designation, Judgment of Foreclosure and Order of Sale at 16 (ECF No. 1-6). Everest was the defendant and Bank of America had not appeared.[4]

The Trustee learned of the impending foreclosure sale from this foreclosure in late June 2011. Although the Trustee had previously abandoned the bankruptcy estate's interest in the premises (August 30, 2010) and the bankruptcy case had been closed (November 2, 2010), on July 7, 2011, the Trustee filed motions in the Bankruptcy Court to reopen the bankruptcy case

---

[3] The parties agree that under a sale pursuant to foreclosure of the first mortgage, Maine Revenue Services will have priority to all but Peoples United's interest.

[4] Because the proceeding apparently was uncontested, it seems likely that Peoples United's lawyers prepared the Foreclosure Judgment and presented it to the District Judge for signature without debate about the significance of the language of distribution. In any event, it is consistent with 14 M.R.S.A. § 6324, which provides that any surplus from the sale shall be paid to "the mortgagor, the mortgagor's successors, heirs or assigns in the proceeding."

4

and to revoke his abandonment of the property. The Bankruptcy Court did reopen the case and on July 20 granted the Trustee's motion to revoke abandonment.

On July 21, 2011, Bank of America purchased Peoples United's interest in Everest's first mortgage debt and obtained an assignment of the Peoples United loan and first mortgage documents and the Peoples United Foreclosure Judgment. Appellate Designation, Loan Sale Agreement, Exhibit N (ECF No. 1-6); Appellate Designation, Assignment of Mortgage, Exhibit O-1 (ECF No. 1-6); Appellate Designation, Assignment of Judgment, Exhibit O-2 (ECF No. 1-6). Peoples United postponed the scheduled foreclosure sale.

Next, the Trustee appeared in the Peoples United foreclosure lawsuit by filing a motion to substitute party, namely, the Trustee in place of Everest. The Maine District Court granted that motion on August 25, 2011.

Then, on September 29, 2011, Bank of America filed a motion seeking to substitute itself in place of Peoples United as the plaintiff in that foreclosure lawsuit. The Maine District Court granted that motion. Bank of America also moved for relief from the Peoples United Foreclosure Judgment pursuant to M.R. Civ. P. 60(b), with the stated intention of dismissing the Peoples United foreclosure case. The Trustee filed an objection to that motion, stating that Bank of America had failed to provide evidence that would support its requested relief under Rule 60(b). On January 31, 2012, the Maine District Court denied Bank of America's Rule 60(b) Motion, stating

> there is no rule providing that it is the prerogative of a party for whom judgment was entered to have that judgment set aside. Rather, . . . [Bank of America] must satisfy 60(b)(6)'s

5

> standard, which requires a showing of 'extraordinary circumstances.' [Bank of America] has not shown such extraordinary circumstances, and instead has predicated its motion on the conclusory assertion that setting aside the Foreclosure Judgment would serve the interests of justice. [Bank of America] has adduced no evidence to support that assertion.

Appellate Designation, Order on Bank of America's Motion to Substitute Party and Bank of America's Motion to Vacate Foreclosure Judgment at 20 (ECF No. 1-6). Bank of America appealed and the Law Court dismissed the appeal as untimely.

No public sale under either foreclosure judgment has ever taken place.

Those are the facts material to the state law question of who gets the surplus proceeds.

***How the Case Arises in This Court.***

On July 3, 2012, the Trustee filed a motion in this District's Bankruptcy Court seeking authority to sell the premises free and clear of liens, claims, interests and encumbrances pursuant to § 363 of the Bankruptcy Code. Bank of America filed an objection to the Sale Motion. The Trustee then commenced an Adversary Proceeding pursuant to Fed. R. Bankr. P. 7001(9) to determine the relative rights of the parties in the Property. On August 15, 2012, the Bankruptcy Court consolidated the Sale Motion with the Adversary Proceeding. The Trustee now concedes that he lacks authority to sell the premises himself, Trustee's Reply Br. 2-4 (ECF No. 11), but maintains that he can compel Bank of America to sell the premises under the first mortgage foreclosure. If successful here, the Trustee says that he will pursue that option either in the Bankruptcy Court or in the Maine District Court.

6

The parties agreed to proceed on a stipulated record before the Bankruptcy Court and submitted briefs to outline their positions. On November 12, 2013, the Bankruptcy Court announced its findings and conclusions on the record in open court as follows:

> I conclude as a matter of law that, contrary to the Trustee's position, the two judgments can be read and given effect in harmony and in a way that, unfortunately for the estate, eliminates—eliminates the possibility that the estate is going to recover proceeds as such. And I say that because this—the first foreclosure judgment was for the benefit of Bank of America's predecessors. The second foreclosure judgment was entered pursuant to a complaint in which Bank of America was named as a party-in-interest but as to which neither Peoples United Bank nor the debtors, and importantly the debtors, sought affirmative relief from the effects of the first judgment. So when the second judgment said ["to the Defendant or any other party appearing in this action"], Bank of America did not appear in the action, but the debtors' interest remains subject to the foreclosure judgment. Anything that they took would be subject to a previously-entered final judgment in favor of Bank of America's predecessors, and the proceeds that they received from the property remain subject to that lien. The one thing that was accomplished here, and this is the only place where I would see the judgments being in conflict at all, is the Maine Revenue Service was—was named a party and took place—took part in the second action. So to the extent that an interest other than the debtors' is involved, it would look to me that the—and I would conclude that the relative priority is to Peoples United Bank, then to Maine Revenue Service, then to Bank of America being the party with a continuing lien unavoided on the debtors' interest in anything they might take. There's no affirmative request by the debtors that—or by Peoples United that the debtors be relieved of the burden that the judgment number one imposed, there's no such relief granted, and as a consequence, the debtors can take nothing that would be—not be subject to the Bank of America mortgage lien.

Adversary Proceeding No. 12-02034 (Bankr. D.Me.), Tr. of Hr'g Nov. 12, 2013 at 5-6 (ECF No. 52). On November 13, 2013, the Bankruptcy Court entered judgment in favor of Bank of America. The Trustee filed a timely notice of appeal.

For the purposes of these proceedings, the parties have stipulated that the value of the premises is $709,700, an amount sufficient to result in proceeds being paid to the Trustee for Everest's creditors if the Peoples United Judgment awards her any amount after Peoples United's secured obligation and Maine Revenue Services' tax lien are paid in full (but not enough to result in proceeds for the Trustee if Bank of America is paid). The parties have also filed additional stipulations in bankruptcy court and at my request a more complete record of the state court proceedings.

## ANALYSIS

The Maine statutes controlling judicial foreclosure by civil action lay out a number of requirements. In foreclosure of a second mortgage by civil action, first mortgagees are not to be joined and are not affected by the proceedings, but they are to be given notice of the proceedings.[5] From all that appears, Bank of America complied with these requirements in its initial foreclosure of its second mortgage. The statutes go on to provide that if the mortgagor fails to exercise her right to redemption within the allotted 90 days from the date of judgment,

---

[5] The statute provides:
> After breach of condition of any mortgage other than one of the first priority, the mortgagee or any person claiming under the mortgagee may proceed for the purpose of foreclosure by a civil action against all parties in interest, except for parties in interest having a superior priority to the foreclosing mortgagee, in either the Superior Court or the District Court in the division in which the mortgaged premises or any part of the mortgaged premises is located. Parties in interest having a superior priority may not be joined nor will their interests be affected by the proceedings, but the resulting sale under section 6323 is of the defendant or mortgagor's equity of redemption only. The plaintiff shall notify the priority parties in interest of the action by sending a copy of the complaint to the parties in interest by certified mail.

14 M.R.S.A. § 6321.

"any remaining rights of the mortgagor to possession terminate," 14 M.R.S.A. § 6323(1). The mortgagee within 90 days thereafter must give notice of public sale and, within 45 days of the first notice, must accomplish the sale.[6] "[T]he resulting sale under section 6323 is of the defendant or mortgagor's equity of redemption only." 14 M.R.S.A. § 6321; Brickyard Assoc. v. Auburn Venture Partners, 626 A.2d 930, 933-34 (Me. 1993). Sale of the equity of redemption is the step that Bank of America failed to accomplish to complete the statutory judicial foreclosure process in this case, and no reason for its failure is given. So, after foreclosure of the second mortgage, according to the statute Everest had no further rights to possession of the premises. Bank of America, however, failed to complete the final step of the process, selling the equity of redemption.[7]

The statutes specify some material differences for foreclosing a first mortgage. Like any judicial foreclosure, the lawsuit is to be "commenced in accordance with the Maine Rules of Civil Procedure," and "[s]ervice of process on all parties and all proceedings must be in accordance with the Maine Rules of

---

[6] 14 M.R.S.A. § 6323(1) states:
> Upon expiration of the period of redemption, if the mortgagor or the mortgagor's successors, heirs or assigns have not redeemed the mortgage, any remaining rights of the mortgagor to possession terminate, and the mortgagee shall cause notice of a public sale of the premises stating the time, place and terms of the sale to be published once in each of 3 successive weeks in a newspaper of general circulation in the county in which the premises are located, the first publication to be made not more than 90 days after the expiration of the period of redemption. The public sale must be held not less than 30 days nor more than 45 days after the first date of that publication and may be adjourned, for any time not exceeding 7 days and from time to time until a sale is made, by announcement to those present at each adjournment.

[7] This District's Bankruptcy Court has characterized public sale as "inevitable" and the mortgagee's responsibilities in that regard as "absolute and unavoidable." In re Stephens, 221 B.R. 290, 297 (Bankr. D. Me. 1998).

9

Civil Procedure." 14 M.R.S.A. § 6321. But unlike a junior mortgage foreclosure, a first mortgage foreclosure lies "against all parties in interest," and parties in interest are defined to include the mortgagor and other mortgagees, including junior mortgagees. Id. If a first mortgage foreclosure civil action produces a foreclosure judgment, the deed of sale at the foreclosure sale does not merely convey the equity of redemption. Instead, it "conveys the premises free and clear of all interests of the parties in interest joined in the action." 14 M.R.S.A. § 6323. In Peoples United's foreclosure lawsuit, both Everest and Bank of America were served and defaulted. For defaults in mortgage foreclosures, the Maine Rules of Civil Procedure require court review and determination that "service and notice" were provided and that "the plaintiff has properly certified proof of ownership of the mortgage note and produced evidence of the mortgage note, the mortgage, and all assignments and endorsements of the mortgage note and the mortgage." Me. R. Civ. P. 55(a)(1)(ii). No one has challenged the District Court's compliance with these requirements. See Appellate Designation, Judgment of Foreclosure and Order of Sale and Exhibit A thereto (ECF No.1-6). As a result, if and when a public sale ultimately does take place pursuant to the foreclosure of the first mortgage, the purchaser at that sale will take the premises free and clear of the interests of Everest and Bank of America. But the question remains, how are the proceeds of that sale to be distributed?

The Maine statute provides that after expenses, proceeds must be distributed "in accordance with the provisions of the judgment," 14 M.R.S.A. § 6324, and that "[a]ny surplus must be paid to the mortgagor, the mortgagor's

successors, heirs or assigns in the proceeding."[8] Obviously if Bank of America had appeared in the lawsuit foreclosing the first mortgage, it would have been listed as a recipient of proceeds in the Judgment prior to any interest Everest might have as a result of the statute. But Bank of America defaulted, it is not listed in the Judgment, and it has failed in its efforts to get that Judgment amended. What are the consequences of its default? Certainly any lien it had on the premises disappeared according to the statute.[9] Moreover, the Maine District Court Judgment of Foreclosure and Order of Sale here provides that proceeds of sale shall go first to the plaintiff (first mortgagee) for costs associated with the sale, then to the plaintiff (first mortgagee) for the sum due on the first mortgage and note, next to party-in-interest Maine Revenue Service (which did

---

[8] Thus, the Maine statute distinguishes between the title to the premises and rights to the proceeds. Mortgagors and parties-in-interest can challenge a report of sale and disbursement of proceeds, "but any such challenge may be for money only and does not affect the title to the real estate purchased by the highest bidder at the public sale." 14 M.R.S.A. § 6324. That is a commonly accepted distinction. See, e.g., G. Nelson and D. Whitman, Real Estate Finance Law § 7.31, at 920-21 (5th ed. 2007):
> The major underlying principle is that the surplus represents the remnant of the equity of redemption and security wiped out by the foreclosure. Consequently, the surplus stands in the place of the foreclosed real estate and the liens and interests that previously attached to that real estate now attach to the surplus. They are entitled to be paid out of the surplus in the order of priority they enjoyed prior to foreclosure. The claim of the foreclosed mortgagor or the owner of the equity of redemption normally is junior to those of all valid liens wiped out by the foreclosure.

(footnotes omitted). The Restatement (Third) of Property: Mortgages § 7.4 (1997), states the same rule, that "the surplus is applied to liens and other interests terminated by the foreclosure in order of their priority and the remaining balance, if any, is distributed to the holder of the equity of redemption." Therefore, "the claim of the holder of the foreclosed equity of redemption to the surplus is subordinate to the claims of all other holders of liens and interests terminated by the foreclosure." Id. cmt. b.

[9] This is a generally accepted principle. According to the Restatement (Third) of Mortgages (1997), "It is a fundamental principle of mortgage law that a valid judicial foreclosure of a senior mortgage terminates not only the owner's title and equitable redemption rights, but also other junior interests whose holders were made parties defendant." Restatement (Third) of Mortgages, § 7.1 cmt a (1997).

appear in the foreclosure lawsuit), and finally, to "the defendant [Everest] or any other party appearing in this action." Appellate Designation, Judgment of Foreclosure and Order of Sale, Exhibit C at 6 (ECF No. 1-6). So although Bank of America and Everest both defaulted, the Judgment gives Bank of America nothing, but allows Everest surplus.[10] That outcome seems consistent with the language of the statute because, unlike Everest, Bank of America does not have the benefit of the statutory language that awards surplus proceeds to "the mortgagor,"[11] it does not have the benefit of any language in the Foreclosure Judgment, and it failed in its state court efforts to amend that Judgment.

Can Bank of America nevertheless succeed to Everest's newly found surplus rights because of its earlier foreclosure of its second mortgage? The bankruptcy court concluded that it could, reasoning that Bank of America had a lien on the proceeds-to-come as a result of that earlier foreclosure without sale.

I think it is a close question whether that conclusion follows under Maine law. The parties have cited no Maine cases recognizing such a lien (*i.e.*, distinct from the lien that Bank of America had merely by virtue of its second mortgage). Moreover, permitting a "look behind" the distribution priorities that the later final judgment clearly established would create its own uncertainties. If there was

---

[10] Surplus returning to the mortgagor is not a particularly surprising precept since she was, after all, the original owner of the premises from which any surplus arises.

[11] The statute goes on to say: "If the mortgagor has not appeared personally or by an attorney, the surplus must be paid to the clerk of courts, who shall hold the surplus in escrow for 6 months for the benefit of the mortgagor, the mortgagor's successors, heirs or assigns and, if the surplus remains unclaimed after 6 months, the clerk shall pay the surplus to the Treasurer of State to be credited to the General Fund until it becomes unclaimed under the Uniform Unclaimed Property Act, and report and pay it to the State in accordance with that Act." 14 M.R.S.A. § 6324. No suggestion has been made that this provision will apply after sale, presumably because even though the mortgagor did not appear personally in the foreclosure lawsuit, she (through the Trustee) has been making a concerted effort to claim the surplus.

12

error in the assignment of priorities in that judgment, the place to attack that error was in that state foreclosure proceeding, something that Bank of America attempted and that the state courts thwarted. "When in two actions inconsistent final judgments are rendered, it is the latter, not the earlier, judgment that is accorded conclusive effect in a third action under the rules of res judicata." Restatement (Second) of Judgments § 15. In reviewing this "last-in-time rule," then-Professor Ruth Bader Ginsberg explained:

> Under the last-in-time rule, if a defense based on the first judgment is not raised in the second action the defense cannot be resurrected in a subsequent proceeding. If the prior adjudication is raised, but is erroneously held not conclusive, a failure to pursue the appellate route to its conclusion similarly precludes the defense. The decision not to raise the prior adjudication, or to discontinue the contest concerning its effect by failing to utilize an opportunity for direct review, settles the matter.

Ruth B. Ginsberg, <u>Judgments In Search of Full Faith and Credit: The Last-In-Time Rule for Conflicting Judgments</u>, 82 Harv. L. Rev. 798, 798-9 (1969).

It is worth considering what would have happened if Bank of America had conducted the mandated public sale after foreclosure of the second mortgage pursuant to the first judgment. If Bank of America had done so, it would have sold subject to Peoples United's first mortgage and what it would have sold would have been the equity of redemption on that first mortgage. Regardless of how little money that public sale might have generated for the benefit of Bank of America, if the sale were to a third party, Bank of America would have no rights to the pending surplus now set to arise out of the first mortgage foreclosure. (If Bank of America had not collected its entire debt, it might have obtained a deficiency judgment on the Note, but that would not help it in this bankruptcy

13

proceeding.) On the other hand, if Bank of America had itself purchased as highest bidder at that hypothetical sale, then it would have purchased the right to redeem Peoples United's first mortgage and would presumably have been considered the mortgagor thereafter under both the statute and the Foreclosure Judgment.[12] But as we know, the sale never happened, so neither of these contingencies—one favorable to Bank of America, one not—applies. Instead, Bank of America is in a middle position, having obtained a Judgment of Foreclosure but without a public sale. Although it suggests that it might conduct a belated sale, see May 8 Tr. at 20, 22-24, 28 (section 6323(3) allows extension of the time for sale for "good cause")), it has not developed a serious argument that a state court would permit it to do so now after more than four years have passed and there has been an intervening foreclosure judgment on the first mortgage. (Under the statute, the foreclosure judgment on the first mortgage cleared all junior encumbrances off the premises.)

So the status is that Everest's possessory interest has terminated, Bank of America neither purchased Everest's equity of redemption itself nor sold it to a third party, Bank of America failed to pursue its interests as a creditor during the later foreclosure of the first mortgage, and the statute and the first mortgage foreclosure judgment ostensibly give Everest, and therefore the Trustee, surplus proceeds.

---

[12] For example, the statute provides that if the mortgagee purchases as highest bidder, "there is no obligation to account for any surplus upon a subsequent sale by the mortgagee," 14 M.R.S.A. § 6323, thereby treating it as assuming the mortgagor's rights.

14

If we overlook Bank of America's failure to conduct a public sale on the second mortgage foreclosure and its unexcused default in the first mortgage foreclosure proceedings, the bankruptcy court's decision has the appeal of fairness. After all, the validity of the debt to Bank of America is unquestioned, and payment of surplus to Everest or the Trustee is an unexpected windfall to them, arising solely out of Bank of America's missteps.[13] But that same windfall resulting from missteps would occur if Bank of America as second mortgagee had not taken any foreclosure steps on its second mortgagee and defaulted in the first mortgage foreclosure proceeding: the statute seems pretty clear that a junior mortgagee with notice who does not appear in a first mortgage foreclosure proceeding (Bank of America's situation here) fails to get proceeds.

There is treatise language that tends towards the bankruptcy court's outcome. 1 G. Nelson and D. Whitman, Real Estate Finance Law § 7.31, at 924 (5th ed. 2007). This treatise first recognizes authority *contrary* to the bankruptcy court's conclusion: "[t]here is case authority that a junior lienor who fails to appear and assert its claim in the judicial foreclosure of a senior mortgage waives its right to surplus," Real Estate Finance Law at 924 (citing Fidelity Bank v. King, 136 P.3d 465 (Kan. 2006)). But it then goes on to prefer an approach that allows junior lienors who default in the foreclosure to nevertheless claim surplus *after*

---

[13] Moreover, giving Everest and the Trustee this "springing" interest is arguably inconsistent with the Law Court's treatment of foreclosures under earlier statutes. In Smith v. Varney, 309 A.2d 229, 232 (Me. 1973), the Court stated (adopting an opinion by Chief Justice Dufresne sitting in the trial court): "Th[e] right of redemption, once extinguished, cannot be revived by any court. . . . Courts must abide by the statutory requirements except in exceptional cases where a court of equity may provide relief."
   But Smith v. Varney does not really encompass this case. Here, Everest is not trying to resurrect her right of redemption. Instead, she is relying on a more recent statutory provision and the wording of a Foreclosure Decree that follows it.

15

a foreclosure sale yields a surplus (citing Florida, Illinois, and New Jersey trial or intermediate appellate courts). The treatise says:

> This latter position clearly represents sound public policy. After all, most foreclosures do not produce a surplus. Therefore, it hardly makes sense to require a junior lienor to appear and plead in every senior foreclosure simply to preserve a claim to a surplus that is highly unlikely to occur. It is difficult to justify the financial expenditure for legal fees and other costs in such a situation. . . . It is much more sensible and efficient to have surplus claims await the outcome of the foreclosure sale.

Real Estate Finance Law § 7.31 at 924-25. "[S]ound public policy," perhaps, but it is hard to locate that policy preference in the text of the Maine statute concerning distribution of the proceeds of sale. Given the language of the first mortgage foreclosure decree and of the statute concerning distribution of sale proceeds, I find it difficult to see how Bank of America's earlier foreclosure judgment—without a public sale—avoids the consequences of default in the later first mortgage foreclosure, consequences that seem to follow under Maine law for a junior lienor who has not yet sold the mortgagor's equity of redemption.

## CONCLUSION

For the reasons stated, I tend to disagree with the bankruptcy court and therefore to vacate and remand. But as I have also stated, the Maine Law Court should have the opportunity to determine this unsettled state law question, and therefore I will certify the question to the Law Court, because it not only "may be," but is "determinative of the cause."

In accordance with Me. R. App. P. 25(b), I propose to state the "facts showing the nature of the case and the circumstances out of which the question of law arises" by using the **FACTS AND PROCEDURAL BACKGROUND** of this opinion at

16

pages 3-8 supra, and attaching the Stipulations and state court records. I propose to state the "question or questions of law to be answered" as set forth in Exhibit A, and to designate the Trustee as the party that shall be treated as the appellant before the Supreme Judicial Court. However, I invite the parties' comments, improvements and amendments on the proposed certification, as well as their enumeration of any errors or material omissions in the facts. They shall do so by June 20, 2014.

**SO ORDERED.**

**DATED THIS 2ND DAY OF JUNE, 2014**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

Where

a. a junior mortgagee obtains a Maine District Court judgment of foreclosure and sale against a debtor/mortgagor (the senior mortgagee not being a party to the action) and the judgment provides that proceeds shall go first to the junior mortgagee, next to a still more junior mortgagee, and last to the debtor/mortgagor;

b. the statutory equity of redemption expires on the junior mortgage foreclosure but the junior mortgagee fails to conduct a foreclosure sale pursuant to the judgment;

c. the senior mortgagee in a separate action in Maine District Court seeks judgment of foreclosure and sale against the same debtor/mortgagor and also names the junior mortgagee as a party-in-interest and serves both the mortgagor and the junior mortgagee;

d. the mortgagor and the junior mortgagee both fail to appear in the second action and are defaulted, and

e. the resulting judgment of foreclosure and sale (now final) provides that proceeds go first to the senior mortgagee, then to state tax authorities, and "Last, to the [debtor/mortgagor] or any other party appearing in this action," thereby not including the second mortgagee who did not appear,

f.  the proceeds of such a sale will pay the full amount due to both the senior mortgagee and the state tax authorities, and still have excess remaining,

does the junior mortgagee who failed to appear in the second lawsuit and is not named as a distributee in the resulting judgment have any right under Maine law to excess proceeds from that foreclosure sale in any manner, either directly, or through a lien on the mortgagor's interest, or on some other basis; or do the excess proceeds belong exclusively to the debtor/mortgagor (now succeeded by the trustee in bankruptcy)?  (If the junior mortgagee has a right to share in the proceeds, the nature of such a right will affect this federal court's determination whether the mortgagor/debtor's intervening bankruptcy filing has impaired that right, as it would, for example, if the only right were to a deficiency judgment on the underlying Note, as contrasted with a lien.)